UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LLOYD E. TURNER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:13-CV-100-SPM |
| | ) |
| WAYNE B. SMITH, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant B. Wayne Smith, Inc.'s ("Defendant's") Motion for Summary Judgment. (Doc. 20). Plaintiff Lloyd E. Turner, Jr. ("Plaintiff") has filed a memorandum in opposition (Doc. 27), and Defendant has filed a reply (Doc. 33). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 12). For the reasons stated below, Defendant's motion will be granted.

**I.    FACTUAL BACKGROUND**

Defendant operates a large facility along the bank of the Mississippi River that is used to load materials onto barges and railcars. Defendant also owns four large towboats. Plaintiff has been employed by Defendant as a welder since 2003, and 90% of his time is spent welding. Plaintiff's job as a welder encompasses welding various metal components around Defendant's land-based facilities, on Defendants' towboats, and on Defendants' barges. Plaintiff is the only employee who performs welding work on Defendant's boats. In the 10% of the time Plaintiff is not welding, Plaintiff performs various tasks on land and on docked boats, including reworking cable and transmission lines and doing repair work.

Plaintiff's welding work requires that he be connected by wires or tubes to tanks or welding machines. Whenever he welds, he brings his welding truck with him, because it contains his necessary equipment. However, Plaintiff also uses welders that are on boats when he makes repairs to boats. Generally, when Plaintiff needs to do welding on a towboat, the towboat is brought to the dock and tied off there. Plaintiff gets on the boat, fixes it, and gets off. This constitutes "90% of [his] work" and he does it "every day." Doc. 21-1, at 29. Plaintiff also sometimes welds from a flat-deck barge. For those projects, Plaintiff drives his welding truck onto a flat-deck barge, where it is transported to a project site. Plaintiff uses a water taxi to return to Defendant's dock at the end of the day. For longer-term projects, the equipment or barge needing repair is brought directly to the dock and tied off so that Plaintiff can access welding leads from his truck that is parked on the bank adjacent to the river. Plaintiff has done work on boats while they are moving up or down the river, but that is "rare." Doc. 21-1, at p. 30. Plaintiff testified that "90% of [his] work as a welder was either on land or connected to the land right there on the dock." Doc. 21-1, at p. 57.[1]

Plaintiff is not assigned as crew member, deckhand, or engineer on any of Defendant's towboats. Plaintiff also does not consider himself assigned to the barges on which he sometimes works. He testified that the only piece of equipment he could be considered "assigned to day in and day out" is his welding truck. Plaintiff does not hold any marine licenses and does not have a marine radio for communication with towboats. The radio in his welding truck is used for land-based operations.

---

[1] Plaintiff argues that a genuine dispute exists because his testimony on this issue is ambiguous. The Court finds no ambiguity. At several points in the deposition, Plaintiff clearly testified that 90% of his work as a welder was performed either on land or at the dock. *See* Doc. 21-1, at pp. 27, 30, 57.

On November 14, 2012, Plaintiff was injured while riding as a passenger on the ADMIRAL, a water taxi owned by Defendant that is used to transport crew members to and from job sites. At the time, Plaintiff had completed his work for the day, which involved welding on a structure in the Mississippi River. On August 15, 2013, Plaintiff filed a complaint alleging negligence under the Jones Act, 46 U.S.C. § 30101 *et seq.*

## II. DISCUSSION

### A. Standard for Summary Judgment

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). The Court's function is

not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

### B. Plaintiff Is Not a "Seaman" Under the Jones Act

Under federal law, a maritime employee who suffers a work-related injury may qualify to bring an action under one of two compensation regimes established by Congress: the Jones Act (which applies to "seam[e]n") or the Longshore and Harbor Workers' Compensation Act ("LHWCA") (which applies to land-based maritime workers). *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 354-56 (1995); 46 U.S.C. § 30104; 33 U.S.C. § 902(3)(G). The Supreme Court has recognized that by enacting these two mutually exclusive compensation regimes, "'Congress established a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen.'" *Id.* at 359 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 (1991)).

In assessing whether an employee is a seaman, the court does not employ a "'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury." *Id.* at 363. Rather, the question of Jones Act coverage "is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id.* at 361.

The Jones Act applies to "[a] seaman injured in the course of employment," 46 U.S.C. § 30104, but it does not define the term "seaman." The Supreme Court has developed a two-pronged test for determining seaman status. Under the first prong, "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" *Chandris*, 515 U.S. at 368 (quotation marks omitted). The Supreme Court has recognized that "this threshold

4

requirement is very broad: 'All who work at sea in the service of a ship' are *eligible* for seaman status." *Id.* (quoting *Wilander*, 498 U.S. at 354).

Under the second prong, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Id.* "The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id*. Put another way, the substantial connection requirement ensures that "[t]he Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Id.* at 369-70 (quotation marks omitted). The Supreme Court has declined to articulate a detailed test that an employee must meet to satisfy this requirement; rather, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Id.* at 370 (quotation marks omitted). "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id*. In 1997, the Supreme Court revisited *Chandris* in *Harbor Tug & Barge Co. v. Papai*, and noted that "for the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." 520 U.S. 548, 555 (1997).

The question of whether a plaintiff is a seaman "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Harbor Tug*, 520 U.S. at 554; *Chandris*, 515 U.S. at 376. If reasonable jurors, applying the proper standard, could reach different conclusions about whether the plaintiff is a seaman, it is a question for the jury. *Harbor Tug*, 520 U.S. at 550; *Chandris*, 515 U.S. at 376. Nevertheless, "'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Harbor Tug*, 520 U.S. at 554 (quoting *Wilander*, 498 U.S. at 356).

The Court will consider the two prongs of the *Chandris* test in turn.

*1. Plaintiff Contributes to the Function of Defendant's Vessels*

Defendant first argues that Plaintiff does not satisfy the first prong of the *Chandris* test because his work does not contribute to the function of Defendant's vessels. The Court disagrees. Plaintiff's testimony shows that he spent most of his time performing welding and mechanical work on Defendant's towboats and barges; such work clearly contributes to the function of Defendant's vessels and is sufficient to show that the first prong is satisfied. *See Saienni v. Capital Marine Supply, Inc.*, No. Civ.A. 03-2509, 2005 WL 940558, at *4 (E.D. La. April 18, 2005) (employee who provided repair and maintenance services to vessels contributed to their function and satisfied the first prong of the *Chandris* test); *Vasquez v. McAllister Towing & Transp. Co., Inc.*, No. 12 Civ. 5442 (NRB), 2013 WL 2181186, at *3 (S.D.N.Y. May 15, 2013) (employee who repaired a vessel's engines while vessels were docked "clearly satisfie[d]" the first prong).

The cases relied on by Defendant are easily distinguished, because they involved employees who used vessels only as transportation and performed no work that helped the vessels function or helped them carry out their missions. *See Williams v. Sims Indus., LLC*, No. 6:06-cv-1982, 2008 WL 5100505, at *1-*3 (W.D. La. Dec. 2, 2008) (the plaintiff's work did not

contribute to the function or mission of a vessel where the plaintiff spent a significant time aboard the vessel, but his only purpose for being on it was to enable him to perform welding repair and maintenance work on fixed offshore platforms); *McCord v. Fab-Con, Inc.*, No. 11-522, 2012 WL 3613111, at *4 (E.D. La. Aug. 21, 2012) (the plaintiff's work did not contribute to the function or mission of a vessel where the plaintiff's "sole duties were to perform welding operations on fixed platforms," the plaintiff "performed no duties aboard" the vessels at issue, and the plaintiff's only connection to the vessels was as a passenger).

Defendant also appears to suggest that because Plaintiff was injured on a water taxi (the ADMIRAL) and his duties did not contribute to the function of that water taxi, he does not satisfy this prong of the *Chandris* test. However, Defendant cites no cases to support the position that the plaintiff in a Jones Act case is only a seaman if he was contributing to the function of the specific vessel on which he was injured, nor has the Court identified any such cases. Moreover, such a position would appear to be contrary to the rule that the seaman inquiry is status-based and that the court "determines Jones Act coverage without regard to the precise activity in which the worker is engaged at the time of the injury." *Chandris*, 515 U.S. at 358.

> 2. *Plaintiff Does Not Have a Connection to a Group of Vessels in Navigation that is Substantial in Terms of Both Duration and Nature*

Defendant's second argument is that Plaintiff does not satisfy the second prong of the *Chandris* test because his connection to Defendants' vessels is not substantial in terms of either its duration or its nature.

Plaintiff has produced evidence sufficient to satisfy the duration component of this prong. The Supreme Court has adopted the rule of thumb that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371. Viewing the evidence in the light most

favorable to Plaintiff, Plaintiff spends approximately 90% of his time working aboard Defendant's docked towboats, fixing them. This far exceeds the 30% minimum standard adopted in *Chandris*. The fact that the boats were docked most of the time that he was on them is not dispositive, as courts frequently find that work performed aboard docked vessels in the service of those vessels contributes to the duration requirement. *See, e.g.*, *Duet v. Am. Commercial Lines LLC*, No. 12–3025, 2013 WL 1682988, at *4 (E.D. La. April 17, 2013) (plaintiff who spent most of his time aboard moored barges satisfied the duration requirement).

However, the Court agrees with Defendant that no reasonable jury could find that Plaintiff's connection to the fleet of vessels is substantial in terms of its nature. The Supreme Court has indicated that *Chandris*'s second prong is intended to identify those employees "whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected." 515 U.S. at 370 (quotation marks omitted). Lower courts have noted that the "special hazards and disadvantages" faced by seamen include the "need to fight fires without outside assistance, the need to abandon ship, the need to survive exposure to inclement weather until help arrives, potential delay or inconvenience in being transported offsite to receive medical attention, and being stuck on a vessel under the control of its Master and operator for extended periods of time until the next port call." *Duet v. American Commercial Lines LLC*, No. 12-3025, 2013 WL 1682988, at *5 (E.D. La. April 17, 2013) (citing *Lara v. Arctic King Ltd.*, 178 F. Supp. 2d 1178, 1182 (W.D. Wash. 2001)). In contrast, maritime hazards that are faced by longshoremen and seamen alike—such as the danger of falling overboard, the trip-and-fall hazards associated with walking on decks, the risks of injuries while handling lines, the risks associated with wind-gusts and river turbulence, and the dangers associated with the movement of docked vessels in the water—are not considered perils of the sea for purposes of

the Jones Act inquiry. *See Duet*, 2013 WL 1682988, at *5; *Denson v. Ingram Barge Co.*, No. 5:07-cv-00084-R, 2009 WL 1033817, at *3 (W.D. Ky. April 16, 2009).

Courts have frequently found that individuals who work exclusively or primarily aboard docked vessels are, as a matter of law, not seamen because they are not regularly exposed to the perils of the sea, especially when other circumstances indicate that the individual is not assigned to the vessel as a member of its crew.[2] *See Vasquez v. McAllister Towing & Transp. Co., Inc.*, No. 12 Civ. 5442(NRB), 2013 WL 2181186, at *4-*5 (S.D.N.Y. May 16, 2013) (holding that a plaintiff who spent 99% of his time repairing vessels tied to the dock and 1% of his time on tugs under way was not a seaman; reasoning that he "was not subjected to storms, high seas, or other caprices of open water," that "onshore assistance was never far away," that he did not sail on any vessels as a member of the crew, that most of the vessels he worked on were out of service, and that he received his daily instructions from land-based employees); *Lara*, 178 F. Supp. 2d at 1182 (holding that a plaintiff who spent all of his time aboard a vessel tied to a pier doing repair and painting work was not a seaman; reasoning that he was not paid as a crew member and that he was not exposed to many of the peculiar risks that seaman face, such as "the need to fight fires without outside assistance, the need to abandon ship, . . . the need to survive exposure to the elements until help arrives," and "potential delay or inconvenience in being transported to medical attention for injuries"); *Duet*, 2013 WL 1682988, at *5 (holding that a plaintiff who worked primarily on moored barges was not a seaman; emphasizing that he was exposed primarily to the types of hazards faced by longshoremen rather than those specific to seamen, was not permanently assigned to any vessel, and went home every night after work); *Denson*,

---

[2] Neither party has directed the Court to any cases applying the second prong of the *Chandris* test in factual circumstances similar to those here. The Court's own research has revealed no Eighth Circuit cases on point, but the Court has identified several cases from other courts that it finds persuasive.

2009 WL 1033817, at *3 (holding that a plaintiff who worked on anchored barges, to which he was transported daily by boat, was not a seaman; reasoning that he was exposed to "hazards that longshoremen commonly encounter" but was not exposed to the special perils faced by seamen and thus was not a seaman under the Jones Act); *Saienni*, 2005 WL 940558, at *11 (holding that a plaintiff who spent more than 30% of his time repairing plaintiff's docked vessels and only infrequently repaired the vessels when they were under way was not a seaman; reasoning that he did not sleep aboard the vessels and that he had "nothing other than a transitory or sporadic exposure to the perils of the sea").

The Court has identified some cases in which courts have found that a plaintiff who worked largely aboard docked vessels was a seaman; however, those cases have involved other factors suggesting a substantial connection to the vessel, such as the plaintiff being assigned to the vessel, the plaintiff performing traditionally sea-based duties, and/or the plaintiff being treated as a Jones Act employee by his or her employer. *See In re Endeavor Marine, Inc.*, 234 F.3d 287, 291-92 (5th Cir. 2000) (finding a triable issue regarding seaman status for an employee who only worked on a vessel when it was moored or in the process of mooring; noting that the employee was permanently assigned to the vessel, "spent almost all of his time working on the vessel," and performed duties directly related to the vessel's sole purpose); *Delange v. Dutra Constr. Co.*, 183 F.3d 916, 920 (9th Cir. 1999) (finding a triable issue regarding seaman status for an employee who did 80% of his work while onboard a barge that moved only rarely; reasoning that "a big part" of his job involved seaman's duties such as serving as lookout, cargo stower, line handler, and occasional pilot ); *Frederick v. Harvey's Iowa Mgmt. Co., Inc.*, 177 F. Supp. 2d 933, 937-38 (S.D. Iowa 2001) (finding a triable issue regarding seaman status for a casino dealer who worked on a docked riverboat; emphasizing that the employee spent most of her working hours on board the ship and that the casino treated her as a Jones Act employee).

When Plaintiff's duties are viewed in light of the above cases, it is clear that no reasonable jury could find that Plaintiff has a substantial connection to Defendant's vessels that satisfies the second prong of the *Chandris* test. First, like the plaintiffs in *Vasquez* and *Saienni,* who worked primarily aboard docked vessels and only rarely on boats that were under way, Plaintiff is not regularly exposed to the special hazards and disadvantages faced by those who go out to sea. Plaintiff does 90% of his welding work (which is itself 90% of his work) "on land or connected to the land right there on the dock." Although he boards docked vessels to do welding and other work, he only rarely does any work on vessels while they are moving up and down the river. Moreover, none of the other factors courts have used to find seaman status are present here. Plaintiff is not assigned to any vessel and is not a crew member of any vessel. After he finishes a project performed aboard a vessel or barge, he returns to shore. He admits that if he is assigned to anything, it is his welding truck. He does not regularly perform traditionally sea-based activities such as piloting towboats or acting as a lookout, and he has no marine license or marine radio, and uses his truck's radio for land-based operations. Taken together, these facts establish that Plaintiff is not "a member of the vessel[s'] crew," but is rather "a land-based employee who happen[ed] to be working on the vessel[s] at a given time." *See Chandris*, 515 U.S. at 370.

Because no reasonable jury could find that the second prong of *Chandris* is satisfied, Plaintiff is not a seaman within the meaning of the Jones Act, and Defendant is entitled to summary judgment on Plaintiff's Jones Act claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED**. An appropriate Judgment will accompany this Memorandum and Order.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of December, 2014.